**NORDICA USA, INC., Nordica S.p.A., Nordica N.V. and Kastle AG, Plaintiffs,**

v.

**DELOITTE & TOUCHE, Defendant.**

No. 2:93–CV–12.

United States District Court, D. Vermont.

Nov. 17, 1993.

Robert B. Hemley, and Norman C. Williams, Gravel & Shea, Burlington, VT, for plaintiffs.

Charles Platto, Brooks McNally Whittington Platto & Vitt, Norwich, VT, Gary F.

Bendinger, Giauque, Crockett & Bendinger, Salt Lake City, UT, for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

In early 1993, the plaintiffs brought this action against the accounting firm of Deloitte & Touche ("Deloitte"). Plaintiffs allege that Deloitte's negligence, negligent misrepresentations, and breach of contract arising from the firm's audit of the financial statements of Kastle USA, Inc. ("Kastle USA") entitles all four plaintiffs to recover damages. Deloitte has filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and in the alternative has moved for transfer of the case to the District of Utah under 28 U.S.C. § 1404(a). Because the plaintiffs' allegations arise in the context of a rather complicated corporate transaction, a review of the transaction is necessary prior to any consideration of the sufficiency of the complaint.

### I. The Transaction

In 1990, the Nordica Group and Fischer Gesellschaft m.b.H. ("Fischer") began to discuss the possible sale of Fischer's wholly-owned subsidiary, Kastle AG.[1] Kastle USA was a subsidiary of Kastle AG. Plaintiffs allege that as part of these discussions, the Nordica Group was provided with, inter alia, copies of Kastle USA's financial statements, which were audited by Deloitte and included Deloitte's audit opinion.

On February 13, 1991, Nordica Austria entered into a stock purchase agreement with Fischer. The agreement allegedly provided that Nordica Austria would purchase all the outstanding shares of Kastle AG. The agreement also allegedly provided that the final purchase price would be based on

---

1. Plaintiffs contend that the "Nordica Group" consists of: Nordica S.p.A., an Italian corporation; Nordica Holding AG ("Nordica Austria"), an Austrian Corporation; Nordica N.V., a Dutch corporation; and Nordica USA, a Delaware corporation. Defendant Deloitte objects to the plaintiffs' use of "a fictional collective entity" and asserts that plaintiffs have merely attempted to bootstrap any potential claims of Nordica Austria, a corporation not party to this action, which was the actual purchaser of Kastle AG.

Deloitte's argument is not pertinent at this stage of the litigation, however. For purposes of evaluating a motion to dismiss, the plaintiffs allegations must be taken as true. Thus plaintiffs' allegation that "The Nordica Group" and Fischer negotiated the sale of Kastle must be presumed true. Whether this can be proven is another matter entirely, but the factual dispute need not be decided in the context of a 12(b)(6) motion.

For this reason, the Court will adopt plaintiffs' use of the term "Nordica Group" as short-hand for the four corporations discussed above.

the consolidated net asset value of Kastle AG as reflected in the ten-month financial statements of Kastle AG as of December 31, 1990. Kastle AG's financial statements are not alleged to have been prepared ·by Deloitte.

Plaintiffs allege that, in connection with the acquisition, Deloitte was asked to audit and issue reports on Kastle USA's financial statements. Plaintiffs further allege that Deloitte knew that a specific purpose of one of the reports was for use in preparing the consolidated financial statements of Kastle AG and determining the final purchase price to be paid by the Nordica Group.

After completion of the acquisition, Nordica Austria, the entity that made the actual purchase of Kastle AG, assigned all of its rights and interests in Kastle AG to Nordica N.V.. On September 6, 1991 Nordica USA and Kastle AG entered into a stock purchase agreement pursuant to which Nordica USA purchased all of the outstanding shares of Kastle USA from Kastle AG. The purchase price was alleged to be based on the net equity of Kastle USA as reflected in financial statements as of February 28, 1991, which were audited by Deloitte. In February of 1992, Nordica USA and Kastle USA merged. The surviving corporation is known as Nordica USA.

## II. The Plaintiffs

The causes of action asserted by the plaintiffs are all related to Deloitte's audits of various Kastle USA financial statements. Each plaintiff's asserted basis for recovery is briefly described below.

*Nordica USA* asserts that its claim is based on its status as the legal successor of Deloitte's client, Kastle USA, which allegedly suffered operational losses over a period of years because certain adverse financial conditions went undetected by Deloitte. Nordica USA also claims to have been harmed because, due to the insufficiency of Deloitte's audit, it overpaid for the stock of Kastle USA that it purchased from Kastle AG. *Nordica N.V.* sues as the assignee of Nordica Austria, the entity which purchased all the stock of Kastle AG at an allegedly inflated price due to Deloitte's faulty audit reports. *Nordica, S.p.A.*, the parent of Nordica Austria, Nordica USA, and Nordica N.V., sues in its capacity as guarantor of Nordica Austria's obligations under the stock purchase agreement. It allegedly suffered harm as a result of its subsidiaries' purchases and management of Kastle USA in reliance on Deloitte's faulty audit reports. *Kastle AG* sues as the former parent of Kastle USA and allegedly suffered financial harm arising from the operation of Kastle USA because it did not know the true financial condition of its subsidiary due to Deloitte's auditing deficiencies.

## III. The Complaint

Although the Complaint contains only three counts, two of which (professional negligence and negligent misrepresentation) are brought by all the plaintiffs, and one of which (breach of contract) is brought by Nordica USA, the extensive corporate maneuvers involved in this case, the presence of several theories of recovery, and the alleged reliance on at least six different financial statements prepared by Deloitte render the complaint somewhat difficult to comprehend. Accordingly, a summation of the Complaint will serve as background for a discussion of the motion to dismiss.

Distillation of the Complaint reveals that the plaintiffs[2] seek to recover money damages stemming from two types of injury: (1) operational losses incurred by Kastle USA as a result of various parties' reliance on Deloitte-audited financial statements, which are alleged to have not reflected the true financial status of the company; and (2) overpayment for the stock of Kastle AG, Kastle USA's parent company, by the Nordica Group, a group of related companies, several of which are plaintiffs.

Nordica USA and Kastle AG seek to recover for Kastle USA's operational losses, while plaintiffs Nordica S.p.A. and Nordica N.V. seek to recover for both the operational losses of their subsidiary and overpayment for the Kastle AG stock. In addition, Nordica USA seeks to recover for overpayment for the Kastle USA stock it purchased from Kas-

---

2. The individual claims of each plaintiff will be distinguished below.

tle AG after the initial purchase of Kastle AG by the Nordica Group. With the above claims in mind, the motion to dismiss can now be properly considered.

## IV. Motion to Dismiss

### A. Choice of Law

Deloitte contends that plaintiffs complaint should be dismissed in its entirety because Utah Code Ann. § 58–26–12 expressly protects accountants from liability to parties that are not in privity or near privity of contract with the accountant. Plaintiffs contend that Vermont law, which applies Restatement (Second) of Torts § 552 to accountants liability cases, should apply, but that the complaint is sufficient under the laws of either jurisdiction. Thus the choice of law issue must be decided prior to an analysis of plaintiffs' complaint.

### 1. Tort Claims

■ A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Vermont Supreme Court adopted a *lex loci delicti* rule for tort claims in *Goldman v. Beaudry*, 122 Vt. 299, 301, 170 A.2d 636 (1961), the last case to explicitly consider the issue. However, the case was decided prior to the Restatement (Second) of Conflict of Laws § 145 adoption of the "significant contacts" approach in tort cases and two federal courts sitting in diversity have predicted that, if squarely confronted with the issue [3], the Ver-

mont Supreme Court would abandon the *lex loci delecti* rule in favor of the "significant contacts" test. *In re Air Crash Disaster at Boston*, 399 F.Supp. 1106, 1109–11 (D.Mass. 1975); *Le Blanc v. Stuart*, 342 F.Supp. 773, 774–75 (D.Vt.1972) [4].

This Court agrees that the "significant contacts" test would be adopted if the Vermont Supreme Court considered the issue and thus will apply Section 145 of the Restatement (Second) of Conflict of Laws. The relevant contacts to consider under § 145 include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, place of incorporation, and place of business of the parties, and; (d) the place where the relationship between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to a particular issue. *Restatement 2d, Conflict of Laws,* § 145 (1971).

■ Under the "significant contacts" test, the Court is persuaded that Utah law should govern the tort claims. The alleged injuries in this case all arise from the Nordica Group's purchase of Kastle USA, which was a Utah resident at the time the audits were performed. The alleged misconduct in this case involves Deloitte's performance as Kastle USA's auditor. Deloitte's Salt Lake City Office performed all of the audit work in question. The allegedly negligent acts took place in Utah. The relationship between Deloitte and Kastle was centered in Utah. In light of these contacts, plaintiffs' assertions that Nordica USA was "influenced" and "harmed" in Vermont are not persuasive.[5]

3. In *Calhoun v. Blakely*, 152 Vt. 113, 116 n. 2, 564 A.2d 590 (1989) the Court declined to decide the issue but noted that the issue has not been presented in recent years. The Court also noted that federal courts had predicted the abandonment of the *lex loci delicti* rule. *Id.*

4. *Le Blanc* is particularly persuasive on the issue because it was written by Chief Judge Holden, who wrote the opinion in *Goldman v. Beaudry*, 122 Vt. 299, 170 A.2d 636, when he was a Justice of the Vermont Supreme Court.

5. These assertions are particularly curious because plaintiff argues in other portions of its

brief that Nordica USA's claim is premised on its status as Kastle USA's legal successor. Assuming that this is the case, the fact that Nordica USA was "influenced" in Vermont would be irrelevant because Nordica USA's claims are derivative of Kastle USA's claims. Kastle USA's injuries occurred in Utah. The fact that the company now does business in Vermont as Nordica USA is not relevant to the choice of law analysis. However, even if those factors put forth by plaintiffs were relevant to the choice of law analysis, under the facts of this case Utah contacts still predominate and Utah tort law would be applicable.

### 2. Contract Claims

██ Vermont's choice of law rule for contract claims looks to Section 188 of the Restatement (Second) of Conflicts of Laws. *Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 233, 245 A.2d 891 (1968); *Morrisville Water & Light Dept. v. United States Fidelity & Guaranty Co.*, 775 F.Supp. 718, 723 (D.Vt. 1991). The significant factors to be weighed are: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Pioneer Credit,* 127 Vt. at 233, 245 A.2d 891 (quoting Restatement, Conflict of Laws § 188 (Proposed Draft, Part II, May 1, 1968)).

Nordica USA is the only plaintiff to assert a contract claim. The claim is based on Nordica USA's status as legal successor to Kastle USA, which allegedly contracted with Deloitte for accounting services. Plaintiff correctly cites the controlling choice of law factors to be considered but does not state that any of them weigh in favor of application of Vermont law. Rather, plaintiffs state only that Nordica USA is now located in Vermont, and that the breach of contract was discovered in Vermont. Of course, neither of these factors ((1) current residence, as opposed to residence at time of contracting or breach, or (2) place where the breach is discovered) are contained in the list of factors plaintiffs urges the Court to consider. Every factor that plaintiffs do list weighs in favor of the application of Utah law[6]. Accordingly, Utah law must govern the contract claims of Nordica USA.

### B. Utah Code Ann. § 58-26-12

Because Utah law is applicable to all of the claims in this case, the motion to dismiss must be analyzed under Utah's statute governing accountant liability, which provides:

No person licensed or authorized to practice under this Chapter or any of his employees, partners, members, officers or shareholders are liable to persons with whom they are not in privity of contract for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by him, except for:

(1) Acts, omissions, decisions or conduct that constitute fraud or intentional misrepresentation; or

(2) Other acts, omissions, decisions, or conduct if the person knew that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action; except however for the purpose of this subsection if the person:

(a) identify in writing to the client those persons who are intended to rely on the services; and

(b) sent a copy of the writing or similar statement to the person identified in the writing or statement then he or any of the employees, partners, members, officers or shareholders may be liable only to the person intended to rely in addition to those persons in privity of contact with him.

Utah Code Ann. § 58-26-12 (Michie Supp. 1992).

### C. Nordica USA's Claims as Successor of Kastle USA [7]

██ The Utah statute limits accountant's liability to those in privity of contract with the accountant, or those in near privity, as defined in subsection (2). Deloitte argues that none of the plaintiffs were in privity of contract with Deloitte and that liability, if it is to exist at all, must be based on the near-privity exception. Plaintiffs' counter that Nordica USA's claims are asserted in its capacity as legal successor to Kastle USA, which was in privity of contract with Deloitte, and are therefore allowed under the Utah

---

6. Utah was the place of contracting, the place of negotiation of the contract, the place of performance of the contract, the place where the subject matter of the contract (Kastle USA) was located, and the domicile of both parties to the contract at the time it was allegedly breached.

7. Nordica USA's claim based on overpayment for the Kastle USA stock, which is asserted independent of Nordica USA's status as the successor of Kastle USA, is discussed below with the claims of the other non-client plaintiffs.

**1088**

statute without resort to the near privity exception.

Although Deloitte argues that "Nordica USA does not allege, nor can it allege, that Deloitte, at the time it performed any of the questioned audits, *knew* Nordica USA would acquire Deloitte's client, Kastle USA," Deloitte need not have known about the merger to be held liable. The Utah statute requires plaintiff to qualify as *either* in privity *or* in near privity with the defendant. The requirement of knowledge is a requirement only for non-clients who are not in privity of contract. If Nordica USA is capable of asserting the claims of Kastle USA and is therefore in privity with Deloitte, Deloitte's knowledge of the future merger of the two companies is irrelevant.

Plaintiffs allege that Nordica USA and Kastle USA merged and now do business as Nordica USA. Plaintiffs also quote Utah Code Ann. § 16–10–71(d) (Michie Supp.1990), which provides that, in the event of merger, the new surviving corporation shall "possess all the rights ... of each of the merging ... corporation(s) ... and every other interest [of the merging corporations] shall be taken and deemed to be vested in such single corporation."

Deloitte responds that: "Kastle USA ... is the only party who can legally allege a claim of professional negligence against Deloitte and the Kastle USA that engaged Deloitte's services no longer exists." Under Deloitte's reading of the Utah statute, any potential liability was fortuitously extinguished upon Kastle USA's merger. However, Deloitte does not muster any authority for this proposition.[8]

Because Nordica USA is asserting Kastle USA's claim, it need not independently establish privity. Kastle USA's right to sue transferred to Nordica USA at the time of the merger under Utah's merger statute. Because Kastle USA's privity is virtually conceded by Deloitte, the Court finds that Nordica USA's claims cannot be dismissed on grounds of lack of privity under Utah Stat. Ann. § 58–26–12.

Having determined that Nordica USA has standing to sue under Utah law, the sufficiency of the complaint in light of Deloitte's motion to dismiss must be determined. In considering a motion under Fed. R.Civ.P. 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). Also, the factual allegations set forth in the plaintiffs' complaint must be considered as true. *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). Defendants seeking to dismiss under Fed.R.Civ.P. 12(b)(6) must show that it is beyond doubt that plaintiff can prove no set of facts in support of a claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Plaintiff Nordica USA claims to be entitled to recovery under three separate theories: professional negligence; negligent misrepresentation; and breach of contract. The facts alleged by plaintiffs in support of all of Nordica USA's claims include: (1) Deloitte's audited financial statements showed Kastle to

**8.** In a footnote, Deloitte argues that "other courts have refused to allow a succeeding entity to assert certain claims of its predecessor." Deloitte supports this statement with one citation to *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.* 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974). In *Bangor Punta,* a corporation brought suit against its former managers for acts that occurred prior to the sale of the company. The Court found that the true party at interest was the new 99% shareholder of the corporation, who was precluded from recovery because the "settled principle of equity that a shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions" was applicable. *Id.* at 710, 94 S.Ct. at 2583.

The Court noted that "[t]his principle has been invoked with special force where a shareholder purchases all or substantially all the shares of a corporation from a vendor at a fair price, and then seeks to have the corporation recover against that vendor for prior corporate mismanagement." *Id.*

*Bangor Punta* prevents a new shareholder from recovering for pre-purchase mismanagement that lowered the price that he paid for the shares. It is wholly inapposite to the issue at hand: survival of pre-merger causes of action against an unrelated third party.

be operating at essentially a break-even level[9] (Complaint, ¶ 10); (2) Kastle USA conducted its operations in reliance on the audit reports and management letters of Deloitte, which indicated that financial systems and internal controls were adequate (Complaint, ¶ 11); (3) The December 31, 1990 and February 28, 1991 financial statements of Kastle USA, as audited by Deloitte, overstated Kastle USA's net asset value by $2.1 million (Complaint, ¶ 25); and (4) This overstatement was the result of a failure to record certain expenses (Complaint, ¶ 25).

In addition to the above facts, Count I (Professional Negligence) alleges: (1) that Deloitte owed Kastle USA a duty to exercise professional skill and judgement (Complaint, ¶ 29); (2) Nordica USA succeeded to the rights of Kastle USA (Complaint, ¶ 30); (3) Deloitte's errors and omissions in the auditing of Kastle's financial statements constituted professional negligence; (4) in reliance on Deloitte's audit reports, Kastle USA declined to take steps it would have taken had it known the true financial condition of the company (Complaint, ¶ 34); and (5) Deloitte's negligence led to losses in the operation of Kastle USA. (Complaint, ¶ 35).

Nordica USA has stated a claim for professional negligence because it has alleged: (1) that Deloitte owed a duty to its client Kastle USA; (2) that certain expenses were not recorded in the audited financial statements, which consequently overstated the net asset value of Kastle by $2.1 million; (3) that Kastle USA suffered losses because it relied on the inaccurate financial statements audited by Deloitte.

Deloitte argues that plaintiffs allegations are insufficient because inaccuracies do not, in and of themselves, signify *ipso facto* that

an audit was improperly conducted. While this may indeed be true, it does not follow that Deloitte is entitled to dismissal because the alleged inaccuracies might not have resulted from an improper audit.[10]

Deloitte also argues that the complaint does not cite the specific accounting standards that were violated. To hold that plaintiffs in accountant liability cases are required, prior to discovery, to cite specific accounting rules would be inconsistent with Fed.R.Civ.P. 8(a), which requires "a short and plain statement of the claim." In any case, plaintiff has alleged specific omissions in the audited financial statements[11]. Whether these omissions constitute professional negligence is a question of fact that can not be determined on a motion to dismiss. Accordingly, Count I as asserted by Nordica USA survives defendants motion to dismiss.

Count II of the complaint alleges negligent misrepresentation. The facts alleged in Count II are essentially the same as those alleged in Count I. Nordica USA alleges that Deloitte made certain representations concerning the financial condition of Kastle USA in its audit reports and representations concerning financial systems and internal controls in its management letters. (Complaint, ¶ 42) These representations were allegedly inaccurate because of the errors discussed above. Nordica USA further alleges that Deloitte "knew or should have known" that the audit reports and letters were misleading, and that Kastle USA relied on the reports and letters to its detriment. (Complaint, ¶ 42, 43)

Taking these allegations as true, Count II as asserted by Nordica USA has adequately

9. Deloitte disputes this characterization, but the Court is not in a position to settle factual disputes in the context of a 12(b)(6) motion. As stated above, plaintiffs allegations must be accepted as true when considering a motion to dismiss for failure to state a claim.

10. In 12(b)(6) context, dismissal should be granted only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 101–02. Deloitte argues the inverse: that because a set of facts may exist under which plaintiff might not

recover, the defendant is entitled to dismissal. This is not the case.

11. Plaintiffs alleged that the overstatement of net asset value was a result of: (1) failing to record payable trade expenses; (2) understating amounts due to salespersons; (3) failing to record promotional/advertising expenses; (4) failing to record return allowances; (5) failing to record original; invoice discounts; and (6) failing to write off or otherwise make provision for uncollectible accounts receivable. Complaint, ¶ 25.

stated a claim for negligent misrepresentation. Deloitte's arguments regarding Nordica USA's failure to cite accounting standards and failure to allege which omissions in financial statements violated accounting standards both fail for reasons stated in the discussion of Count I.

█ Count III alleges breach of contract. Nordica USA is the only plaintiff that asserts this claim. The claim is based on Kastle USA's retention of Deloitte to perform audit services. Because, as discussed above, Nordica USA can assert Kastle USA's pre-merger causes of action, this claim does not merit much discussion. In addition to the facts alleged in Counts I and II, Count III alleges that Deloitte exchanged audit services for the promise of payment by Kastle USA. It is alleged that Kastle USA paid Deloitte for its services, and it is alleged that Deloitte breached its contract with Kastle USA by failing to audit the Kastle USA financial statements with professional skill and judgment.

The facts alleged in the complaint, discussed above, are sufficient to support the claim for breach of contract. As with the other counts, Nordica USA has alleged specific omissions and errors in the financial statements; whether these errors constitute breach of contract is a question of fact that is not ripe for determination on a motion to dismiss.

D. Non–Client Claims

The claims of Nordica N.V., Kastle AG, and Nordica S.p.A., companies that are not alleged to be in privity of contract with Deloitte, as well as the claims of Nordica USA asserted independently of its status as successor to Kastle USA, are more difficult for plaintiffs to assert under the Utah statute. To have standing to assert the claims against Deloitte, the non-client plaintiffs must show that their complaint fits within the following exception to the privity rule:

(2) Other acts, omissions, decisions, or conduct if the person *knew that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action;* except however for the purpose of this subsection if the person:

(a) identify in writing to the client those persons who are intended to rely on the services; and

(b) sent a copy of the writing or similar statement to the person identified in the writing or statement then he or any of the employees, partners, members, officers or shareholders may be liable only to the person intended to rely in addition to those persons in privity of contact with him.

Utah Code Ann. § 58–26–12 (Michie Supp. 1992) (emphasis added).

Deloitte argues that under the Utah rule, none of the plaintiffs are in near-privity with Deloitte. The non-client plaintiffs claim that the allegations fit squarely within the near-privity requirement. Because these conflicting positions are grounded in alternative interpretations of the Utah statute, a closer analysis of the statute is required.

█ The first disagreement between the parties centers on the *when* knowledge is required under the Utah statute. Deloitte interprets the statute to require that, to be liable to a non-client, an accountant must have known *at the time the audit was performed* that the client had as a primary intent for the services to benefit or influence a third party. The non-client plaintiffs counter that "there is no statutory requirement that the accountant must have the requisite knowledge about the client's intent" at the time the audit was performed. The Court finds Deloitte's construction of the statute more persuasive.

Under the non-client plaintiffs' reading of the Utah statute, the exception would swallow the rule. If accountants, when notified years after an audit that past financial statements are being forwarded to third parties, could be held liable to those third parties, accountant's liability would be virtually unlimited.[12] Further, the language of the stat-

12. Under plaintiffs' reading, a client could contract for audit services and forward the documents to unlimited numbers of third parties years later. The accountant would then be liable to all the third parties if the client, years after the audit, let the accountant know of the third party

ute requires that the accountant know that his "professional services" were intended to benefit the third party. The "professional services" end when the audit is complete. It would defy logic to retroactively apply an accountant's post-audit knowledge that documents are forwarded to a third party to infer that he knew his "professional services", which were completed years earlier, were intended to benefit that party.

### 1. Nordica S.p.A. Nordica N.V.

■ Plaintiffs Nordica S.p.A. and Nordica N.V. do not allege that Deloitte knew, at the time it performed the work, that they would rely on any of the Deloitte-audited financial statements in setting a price for Kastle AG other than the December 31, 1990 statement. Accordingly, any portion of Nordica S.p.A.'s or Nordica N.V.'s claims for overpayment in the Kastle AG transaction which are based on errors in Deloitte-audited financial statements other than the December 31, 1990 statement must be dismissed.

■ Claims of Nordica S.p.A. and Nordica N.V. based on the December 31, 1990 financial statement must survive the motion to dismiss because plaintiffs have alleged that Deloitte had knowledge that the specific purpose of preparing that statements was for use in the consolidated statements of Kastle AG, which would be used to set a price for the sale of Kastle AG to the Nordica Group.[13] This allegation satisfies the knowledge requirement of the Utah statute.

■ Additionally, Nordica S.p.A. and Nordica N.V. claim to have been damaged by Deloitte's negligence because Deloitte knew or should have known [14] that they would rely on Deloitte-audited statements in the operation of Kastle USA. To the extent that this claim for operational losses is grounded in the Nordica Group's "belief as to the financial condition as set forth in paragraph 14 of the Complaint" (Complaint, ¶ 20), it must be dismissed. Paragraph 14 of the Complaint discusses the Nordica Group's review of financial statements prepared prior to the December 31, 1990 statement. As discussed above, the Utah statute bars these claims because plaintiffs have not alleged that Deloitte knew of the Nordica Group's reliance at the time it prepared the statements.

■ To the extent that this claim derives from losses incurred in reliance on the December 31, 1990 statement, it withstands the motion to dismiss because claims based on this statement have already been upheld for the reasons stated above. The decision with respect to subsequent financial statements is more difficult. Plaintiffs do allege that Deloitte knew that the Nordica Group would rely on the Deloitte-audited financial statements in the operation of Kastle USA. However, the Utah statute requires more: the plaintiff must show that Deloitte knew that a *"primary intent of the client* was for the professional services to benefit or influence a particular person." Utah Stat.Ann. 58–26–12 (emphasis added). The bare allegation that Deloitte knew that the Nordica Group would rely on a document, without reference to the intent of the client, is insufficient.[15] A con-

---

involvement. Especially when coupled with plaintiffs' asserted "duty to correct", this reading of the statute would place an enormous burden on auditors.

13. While the actual sale of Kastle AG was to Nordica Austria, plaintiffs have alleged that Deloitte knew that the "Nordica Group", of which Nordica N.V. and Nordica S.p.A were a part, would rely on certain audits in setting a price for the stock. If the Nordica Group was indeed acting in concert, as is alleged in the complaint, the fact that payment was made by one member of the group does not preclude the possibility that other members of the group also relied on Deloitte's work product, suffered damages and therefore have valid claims.

14. Deloitte correctly notes that plaintiffs used the term "knew or should have known" at several points in their complaint. Deloitte also correctly points out that the Utah statute requires actual knowledge of third-party reliance on the part of accountants sought to be held liable. Thus the term "or should have known" is superfluous under the Utah statute.

However, the mere addition of the disjunctive phrase "or should have known" does not negate the fact that the Complaint alleges that Deloitte "knew" of the Nordica Group's reliance when it prepared the February 28, 1991 financial statement.

15. The insufficiency of the allegation is particularly evident when it is compared to plaintiffs first allegation with respect to the December 31,

trary interpretation would eviscerate · the Utah statute, which clearly requires more than a general allegation of knowledge on the part on an accountant who is to be held liable to a non-client.[16] Accordingly, the claims of Nordica S.p.A. and Nordica N.V. based on the operational losses of Kastle USA that derived from reliance on financial statements issued subsequent to the December 31, 1990 statement must be dismissed.[17]

In sum, as to plaintiffs Nordica N.V. and Nordica S.p.A., Counts I and II must be dismissed to the extent that reliance on Deloitte-audited financial statements and management letters, with the exception of the December 31, 1990 statement, is alleged. To the extent that Counts I and II seek recovery for damages suffered in reliance on the December 31, 1990 statement, the motion to dismiss is denied.

### 2. Nordica USA's Independent Claim

■ The same principles discussed above apply to any claims based on Kastle AG's sale of Kastle USA to Nordica USA. Plaintiffs do not allege that Deloitte knew, at the time the February 28, 1991 financial statements, from which the purchase price was set, were prepared, that Kastle USA's primary intent was for Deloitte's professional services to benefit or influence Nordica USA. Rather, plaintiffs allege only that Deloitte knew that the financial statement would be relied on in the operation of Kastle USA, which was a direct subsidiary of Nordica N.V. at the time. As discussed above, this general allegation is insufficient under the Utah statute. For this reason, any claim based on Kastle AG's sale of Kastle· USA to Nordica USA must be dismissed.[18]

### 3. Claims of Kastle AG

■ Kastle AG's claims can only stem from the operational losses of Kastle USA.[19] The preliminary determination that must be made is whether Kastle AG has standing to sue under the Utah statute. In contrast to the other non-client plaintiffs, Kastle AG was the parent company of Kastle USA when all of the financial statements in question were drafted. Moreover, the complaint alleges that Deloitte knew that Kastle AG received and relied upon the Kastle USA financial statements.

However, Kastle AG's allegations are insufficient because they do not allege that Deloitte knew that their client, Kastle USA, had as a primary intent for Deloitte's services to benefit Kastle AG, its parent company. While it might be reasonable to assume that Deloitte knew Kastle AG would rely on the financial statements of its subsidiary, merely alleging Deloitte's knowledge, without more, is insufficient under the Utah statute, which,

---

1990 financial statement. Plaintiff alleged in paragraph 16 of the complaint that "Kastle USA informed Deloitte that a *specific purpose* of these audited financial statements ..." was for use in the Kastle AG consolidated statements from which a price would be determined (emphasis added).

Paragraph 16, unlike the instant allegation, alleges the client's role in informing the accountant that others would rely on the statements. This distinction is crucial. The Utah statute does not require only that an accountant know of third party reliance, but that the accountant know that *the client intends that the third party rely.*

16. If a general allegation were sufficient, the words "primary intent of the client" would not be necessary.

17. While all claims for operational losses asserted by these plaintiffs are now dismissed, the Court notes that damages incurred by the corporate parents of Kastle USA would appear to be

indistinguishable from the damages incurred by Kastle USA itself, which, proceeding as Nordica USA, has brought its own claim.

18. The Court also notes that this sale occurred between two members of the "Nordica Group". If the "Nordica Group" is indeed to be considered the "owner" of Kastle USA (*see* Complaint, ¶ 21) there could not be any damage arising from the sale of Kastle USA from one member of the Group to another.

In other words, taking plaintiffs complaint as true, the "Nordica Group"· overpaid Fischer for Kastle AG. Although each member of the group may have suffered some percentage of the loss attributable to the overpayment, the · plaintiffs cannot abandon the "Nordica Group" concept in an attempt to recover a second time for intragroup transactions.

19. As it was the entity being purchased by the Nordica Group, it cannot have a claim for overpayment.

as discussed above, requires more than a general allegation of knowledge.

For this reason, Counts I and II, as brought by plaintiff Kastle AG, must be dismissed.[20]

## V. Plaintiffs' Motion for Leave to Amend

■ Plaintiffs request leave to replead in the event of full or partial dismissal pursuant to Fed.R.Civ.P. Rule 15. Rule 15 requires that the leave to amend be "freely granted when justice so requires." Fed.R.Civ.P. Rule 15(a). Moreover, it is well settled that when a complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(6) and the plaintiff requests to file an amended complaint, the amendment should ordinarily be allowed. *See, e.g., Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991); Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure,* Civil 2d § 1483 (1990).

Deloitte argues that leave to file an amended complaint should be denied because the plaintiffs "cannot, through amendment, cure the reality that there are no facts supporting the elements required to assert the causes of action alleged in this case."

Although the analysis contained in this opinion will render any amendment of some of plaintiffs' claims futile,[21] it may be possible for other pleading defects to be cured. Therefore, plaintiffs are granted leave to file an amended complaint. The proposed amended complaint should be filed within 15 days of the date of this opinion and order. Accordingly, to the extent plaintiffs claims are dismissed, dismissal is without prejudice.

## VI. Motion to Transfer

■ Deloitte also argues, in the alternative to complete dismissal, for transfer the case to the District of Utah pursuant to 28 U.S.C. § 1404(a), which permits discretionary transfer to any other district court where the civil action may have originally been brought, "for the convenience of parties and witnesses, in the interest of justice ..."

"The decision whether or not to transfer ... is committed to the broad discretion of the trial court." *Sollinger v. Nasco International, Inc.,* 655 F.Supp. 1385, 1389 (D.Vt. 1987). The moving party has the burden of proof in establishing that the action should be transferred. *Id.*

Deloitte claims that all of its material witnesses are located in Salt Lake City and will be greatly inconvenienced by a trial in Vermont. While the Court recognizes that there may be some hardship to the defendant or witnesses residing in the District of Utah, transfer would merely shift those same burdens to the plaintiffs.[22]

Because Deloitte has the burden of convincing the Court that the convenience of the parties and witnesses, in the interest of justice, favor transfer, and the evidence submitted indicates that balance of convenience

---

**20.** Kastle AG's claim based on the operational losses of Kastle USA, like similar claims brought by Nordica N.V. and Nordica S.p.A., appears indistinguishable from the claim for operational losses brought by Kastle USA itself, which is now doing business as Nordica USA. However, the Court need not reach this question because the Kastle AG claims are dismissed pursuant to the Utah statute.

**21.** For example, given this Court's determination that to successfully allege accountant liability, Utah law requires that an accountant know, at the time of the audit, that his client intend third-party reliance, no amendment can cure the deficiency of claims arising from any member of the Nordica Group's reliance on financial statements prepared prior to the December 31, 1990 statement.

**22.** Plaintiffs submit that all the documents of Kastle USA (now Nordica USA) are in Vermont. Plaintiffs further submit that people employed by Nordica USA with the most knowledge of the issues in dispute reside in Vermont. The European plaintiffs also travel to Vermont on business matters involving Nordica USA and contend that Vermont is the more convenient forum.

Although the choice of law analysis determined that the causes of action alleged arose in Utah, the decision to transfer involves different considerations. For example, the fact that Kastle USA moved to Vermont *after* the causes of action arose was irrelevant to the choice of law determination but is an important consideration in the decision regarding transfer. In short, the fact that Kastle USA was, at one point, in Utah is irrelevant when calculating the inconvenience that the plaintiffs would suffer if the litigation were to continue in Utah now.

does not strongly favor Utah, the motion to transfer is denied.

## VII. Motion to Stay

Because this opinion and order determines the pending motion to dismiss and motion to transfer, Deloitte's motion to stay discovery pending disposition of the other motions is denied as moot.

### CONCLUSION

Defendant's motion to dismiss (Papers 5 and 9) is hereby DENIED with respect to all counts brought by plaintiff Nordica USA as successor of Kastle USA; GRANTED with respect to claims brought by Nordica USA in its own capacity; GRANTED with respect to plaintiff Kastle AG; and GRANTED IN PART AND DENIED IN PART, consistent with foregoing opinion, with respect to plaintiffs Nordica S.p.A. and Nordica N.V. Plaintiffs have 15 days from the date of this opinion and order to file an amended complaint.

Defendant's motion to transfer (Paper 5 and 9) is hereby DENIED.

Defendant's motion to stay discovery (Paper 5 and 9) is hereby DENIED as moot.