Holly M. GRIFFITH and George Griffith, Plaintiffs,

v.

Steve E. WHITE, Defendant.

No. 2:95–cv–217.

United States District Court, D. Vermont.

June 25, 1996.

756

William Francis Ellis, McNeil, Leddy & Sheahan, P.C., Burlington, VT, Frederick John DeFilippo, Elmira, NY, for Plaintiffs.

Stephen Jackson Soule, Paul, Frank & Collins, Inc., Burlington, VT, for Defendant.

### OPINION AND ORDER

SESSIONS, District Judge.

This personal injury action is brought in this Court based on diversity of citizenship. Plaintiff Holly Griffith ("Griffith") was a passenger in a car owned and operated by Defendant Steve E. White ("White") when a one car motor vehicle accident occurred in the Province of Quebec, Canada, on April 17, 1994. The matter before the Court is Defendant's Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Defendant asserts that the Quebec Automobile Insurance Act, a no-fault law, applies to the Plain-

tiffs' personal injury claim, thereby barring recovery in Vermont. Plaintiffs argue that because Vermont has the most significant relationship with the tort claim, Vermont law should apply.

### I. *Statement of Facts*

Griffith is a resident of New York State who began attending Trinity College in Vermont in September of 1993. White is a resident of Vermont and attended Champlain College in Burlington, Vermont at the time of the accident. Griffith and White had been acquainted in the Burlington area prior to the date of the accident.

On the evening of April 16, 1994, Griffith and several friends drove from Burlington to the Frontier Bar in the Province of Quebec. White also drove to the Frontier Bar on that date with his friend, Wade Miller. White's car was registered and insured in Vermont.

Griffith met Miller at the bar. Griffith decided to return to Vermont with Miller and White in White's vehicle. White agreed that Griffith could return to Vermont with them. With White driving, Miller, Griffith, and one additional passenger left the Frontier Bar when it closed at 3:00 a.m. Approximately ten minutes later White's car veered off the road, went down an embankment and flipped over, coming to rest in a stream. Griffith was injured in the accident and received initial treatment in Quebec. She was subsequently treated for her injuries in Vermont and New York.

Griffith has since requested and received compensation for her injuries from the Societe de L'Assurance du Quebec ("Societe"). The Societe administers Quebec's compensation program under their province's Automobile Insurance Act ("the Act"). The Societe has joined Griffith's lawsuit, seeking subrogation under Quebec law.

### II. *Discussion*

A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64,

58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Goldman v. Beaudry,* 122 Vt. 299, 170 A.2d 636 (1961), the Vermont Supreme Court applied the rule of *lex loci delecti* to determine the rights and liabilities of the parties in tort actions. The application of *lex loci delecti* results in predictability and uniformity of choice of law as the court must apply the law of the jurisdiction in which the tort occurred. *Id.* at 301, 170 A.2d 636.

A. *History of Lex Loci Delecti in Vermont*

The adoption of the *lex loci delecti* rule by the Vermont Supreme Court was consistent with the first Restatement of Conflict of Laws and the prevailing rule at the time of its adoption. *See* Restatement, Conflict of Laws (1934) §§ 377–379. Subsequently, the Restatement was revised in 1971 in response to courts' and commentators' frustration with the doctrine's rigidity and inflexibility. Restatement Second of Conflicts of Laws § 145 cmt. 2 (1971). The main source of frustration with *lex loci delecti* is its inability to solve the "complex problems which arise in modern litigation ... often yield[ing] harsh, unnecessary, and unjust results." *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964).

In response to this criticism, the Restatement Second adopted the "significant relationship" approach: that "the rights and liabilities of the parties in tort are said to be governed by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflicts of Laws § 145(1) (1971). In the "significant relationship" approach, the place the tort occurred is only one aspect of the test to be applied for determining the choice-of-law for tort actions. *Id.* § 145(2). Thirty-one states have now rejected the *lex loci delecti* doctrine in favor of policy-based approaches to choice-of-law; a majority of those have adopted the principles of the Restatement Second as representing the most comprehensive and fairly balanced approach. *O'Connor v. O'Connor,* 201 Conn. 632, 519 A.2d 13, 18, 21 (1986).

The Vermont Supreme Court has not had an appropriate opportunity to reconsider the application of *lex loci delecti* doctrine in tort cases, hence this Court is placed in a position to predict what the Vermont Supreme Court would do if faced with similar facts and circumstances. In *Calhoun v. Blakely,* 152 Vt. 113, 564 A.2d 590 (1989), the Vermont Supreme Court noted that federal courts have predicted that it will abandon the *lex loci delecti* rule in favor of a more flexible approach. *In re Air Crash Disaster,* 399 F.Supp. 1106, 1110–11 (D.Mass.1975); *LeBlanc v. Stuart,* 342 F.Supp. 773, 774–75 (D.Vt.1972). In *Calhoun,* however, the court declined to decide the issue, indicating that under any approach the law of New Hampshire applied because the tort occurred in that state and both the plaintiff (decedent) and defendant were residents of New Hampshire. However, the court did not bar future reconsideration of the issue, stating that the court had not had an occasion to reconsider it in recent years. 152 Vt. at 116, n. 2, 564 A.2d 590.

Approximately twenty years ago, two federal courts predicted that Vermont would adopt the significant relationship test of the Restatement Second. *In re Air Crash Disaster,* 399 F.Supp. at 1111; *LeBlanc,* 342 F.Supp. at 774. The district courts reviewed *Goldman,* noted that this case was decided before the Restatement Second adopted the significant relationship approach to tort cases, and commented that the Vermont Supreme Court had not been presented with an opportunity to reconsider application of the *lex loci delecti* rule.

In *In re Air Crash Disaster* the district court noted that when Vermont adopted the *lex loci delecti* doctrine it was the prevailing rule and that the Vermont Supreme Court relied on decisions of New Hampshire, New York, and Pennsylvania in its adoption, all of whom have subsequently abandoned *lex loci delecti.* 399 F.Supp. at 1109–10. The district court also relied on the fact that the Vermont Supreme Court had adopted the Restatement Second approach to choice of law for both contracts cases and strict products liability. *See Pioneer Credit Corp. v. Carden,* 127 Vt. 229, 245 A.2d 891, 894 (1968), (application of significant factors test based on the Restatement, Conflicts of Law § 188

(Proposed Draft, Part II, May 1, 1968)), *and Zaleskie v. Joyce*, 133 Vt. 150, 333 A.2d 110 (1975), (application of the Restatement (Second) of Torts to strict products liability).

In *LeBlanc*, Judge Holden predicted that the Vermont Supreme Court would apply the Restatement Second approach to the issue of intra-family tort immunity. 342 F.Supp. at 774. He distinguished *Goldman*, creating an exception to *lex loci delecti* for the question of family immunity. Judge Holden also wrote the Vermont Supreme Court's opinion in *Goldman* when he was a member of that court. *See In re Air Crash Disaster*, 399 F.Supp. at 1111, n. 7.

More recently, this Court in *Vermont Plastics, Inc. v. Brine, Inc.*, 824 F.Supp. 444 (D.Vt.1993), *aff'd* 79 F.3d 272 (2d Cir.1996) and *Nordica USA, Inc. v. Deloitte & Touche*, 839 F.Supp. 1082 (D.Vt.1993), applied § 145 of the Restatement Second. Both cases involved contract and tort claims. In *Vermont Plastics, Inc.*, the Court utilized the reasoning in *LeBlanc* to apply the Restatement Second to the tort claim. *Id.* at 1447 n. 3. Citing to *Calhoun*, the Court in *Nordica* agreed that the "significant contacts" test would be adopted in tort claims if the Vermont Supreme Court considered the issue. *Id.* at 1086 n. 3.

The application of the significant relationship test is consistent with other opinions from the Second Circuit. The United States District Court for the District of Connecticut faced a similar choice of law issue in a Connecticut wrongful death action against a Colorado manufacturer for allegedly causing the death of Connecticut domiciliaries in a West Virginia plane crash. Connecticut at that time followed the rule of *lex loci delecti* in tort actions, and thus West Virginia law would have applied. But unlike the law of Colorado or Connecticut, the application of West Virginia law precluded the plaintiffs' actions in strict product liability and limited recoverable damages. *Halstead v. United States of America*, 535 F.Supp. 782 (D.Conn. 1982), *aff'd sub nom. Saloomey v. Jeppesen & Co.*, 707 F.2d 671 (2d Cir.1983). Noting that *lex loci delecti* had been severely criticized by courts and commentators alike, the court was convinced that the Connecticut

Supreme Court would abandon *lex loci delecti* in favor of the Restatement Second rule "if faced with the fact situation in the instant suit." *Id.* at 788. The court held that absent any meaningful contact other than pure fortuity between the litigation and the state of the occurrence of the tort, it would be "offensive to traditional notions of justice and normal expectations" to apply the law of the state where the tort occurred. Further, the court stated that to limit the right of nonresidents by applying restrictions of tort compensation would "appear arbitrary, inequitable, and without rational justification." *Id.* at 787.

Finally, noting the trend of "many of this nation's courts," the Vermont Superior Court chose to apply the significant relationship analysis of the Restatement Second for determining choice of law for a tort injury resulting from the same accident that involved Griffith and White. *Miller v. White*, S233–95Fc, slip op. at 4 (Super.Ct. May 9, 1996). The Superior Court, using the reasoning adopted by the Connecticut Supreme Court in *O'Connor*, 519 A.2d at 20, determined that application of the *lex loci delecti* rule would make the choice of law turn upon a "purely fortuitous circumstance," namely the geographical location of the parties' vehicle at the time the accident occurred. *Miller*, slip op. at 4 (quoting *O'Connor* 519 A.2d at 20). "Choice of law must not be rendered a matter of happenstance, in which the respective interests of the parties and the concerned jurisdictions receive only coincidental consideration." *Id.* The State Superior Court determined that, because of the *lex loci delecti* rule's inadequacies in its application to the personal injury case at issue, it would adopt the significant contacts test to determine which state's law has the most significant relationship to the occurrence and the parties. *Id.* at 6.

For all of the reasons stated above, this Court is convinced that the Vermont Supreme Court, if faced with a similar set of facts, would abandon the rule of *lex loci delecti* in favor of the most significant relationship test of § 145 of the Restatement Second. Thus § 145 of the Restatement Sec-

ond will be applied here to determine the choice of law issue.

## B. *Restatement Second Test and Application*

Section 145 of the Restatement Second provides in subsection (1) that "[t]he rights and liabilities of the parties with respect to an issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflicts of Laws § 145(1) (1971). Section 6 of the Restatement, in turn, provides:

> 1) A court, subject to the constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue, (d) the protections of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* § 6(1), (2). Section 145(2) establishes the rules of priority to facilitate the application of the principles of § 6 to tort cases:

> "Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to the issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue."

*Id.* § 145(2).

In evaluating the policy choices set out in §§ 145(1) and 6(2), the Court first applies the significant contacts test of § 145(2). Applying the analysis of § 145(2) to the facts of this case results in § 145(2)(a), the place where the injury occurred, as the only contact weighing in favor of applying Quebec law. However, § 145(2)(b), (c) and (d) indicate that the law of Vermont should apply. The Defendant is a citizen of Vermont, and both parties attend college in the state. Defendant's automobile insurance policy was written in Vermont and the car is registered in the State. Ninety percent of the Plaintiff's medical costs were incurred in Vermont. The parties' relationship centered in the State. Moreover, to the extent that drinking alcohol may have been conduct that contributed to the alleged negligence, that conduct was initiated by the Defendant in Vermont. Thus, it would appear that Vermont would have a more significant relationship to the cause of action than Quebec.

Because of the doctrinal presumption in favor of the law of the place of injury, the Court must also analyze the respective policies and interests of Quebec against the interests of Vermont, the forum state. In applying the § 6 guidelines to the circumstances of the present case, the Court finds that Vermont's significant interest in preserving a common law remedy for plaintiffs mandates application of Vermont law. Although neither Griffith nor the Societe are Vermont domiciliaries, and thus the state has no particular interest in protecting their full right to recovery, several of the factors listed in the Restatement Second § 6(2) point toward this result.

In first considering the policies and interests of Quebec, a review of the Quebec Automobile Insurance Act ("the Act"), the governing law of Quebec for automobile accident-related injuries, is necessary. The Act is a no-fault comprehensive plan of compensation for Quebec residents injured in automobile accidents in any location and nonresidents injured in automobile accidents in Quebec and is administered by the Societe de L'Assurance du Quebec ("Societe"). A Quebec resident who is injured outside of Quebec retains any rights to recovery he or she has under the law of the place of injury and the Societe is subrogated to such rights to the extent it has paid the claim. Q.R.S.1995, ch.

A–25; Automobile Insurance Act §§ 83.59, 83.60. The Act authorizes compensation for a nonresident injured in Quebec, provided that he or she was not responsible for the accident and that his or her native government does not have an agreement with the Societe barring such recovery. The Societe is empowered by the Act to sue for recovery from any nonresident who causes an accident in Quebec for any compensation the Societe has paid to victims of the accident. *Id.* § 83.61.

In the § 6 guideline pertaining to the needs of the interstate and international systems, there is no danger of offending the interests of Quebec. The Act itself provides that the Societe can seek reimbursement from a responsible nonresident for accidents caused in the province, and it does not restrict such recovery to Canadian Courts or Canadian causes of action. The Act permits Quebec residents injured outside the province to seek recovery under the laws of the place of their injuries. For accidents occurring in Quebec, compensation under the Act replaces any rights or remedies for personal injury in a Canadian court of justice. *Id.* § 83.57. Applying the law of Quebec in this case then, might lead to the anomalous result that Americans injured by other Americans in Quebec would be precluded from recovery in tort under the laws of the province, while Quebec residents injured outside their home territory would be free to sue under the Act in the courts of the place where the accident occurred. *O'Connor,* 519 A.2d at 24–25. In this instance, to the extent that the Societe is partially subrogated to the Plaintiffs, pursuit of this cause of action under Vermont law is in Quebec's interest and might promote the efficient and predictable allocation of losses within the international system. *See Reisch v. McGuigan,* 745 F.Supp. 56, 61 (D.Mass. 1990).

In applying the § 6 factor of the relevant policies of the forum, Vermont law clearly expresses an interest in preserving the Plaintiffs' cause of action. Vermont law maintains a plaintiff's traditional rights of recovery. While the Plaintiffs in this case are not Vermont citizens, the Defendant and the insurer are Vermont citizens and are subject to the laws of Vermont in determining insurance rates and allocation of risks and damage. Applying the law of Vermont in this instance is neither surprising nor inequitable.

Quebec has little interest in determining whether its Automobile Insurance Act prohibits the cause of action of one U.S. citizen against another in a United States court. The outcome of the litigation will not increase Quebec automobile insurance rates nor will it impose any costs on a Quebec defendant. Because the amount already paid by the Societe may be reimbursed, Quebec may actually benefit from the cause of action. *Id.*

In reviewing the § 6 factor of justified expectations of the parties, it is likely that Griffith and White acted without prior thought of the legal outcome of an automobile accident in Quebec versus Vermont. Thus the place of injury is not applicable in determining justified expectations of the Plaintiffs or the Defendant. *See* Restatement (Second) of Conflicts of Laws § 145 cmt. sub. 1 (1971) (the relative insignificance of justified expectations pertaining to tort law).

Finally, in assessing the certainty, predictability and uniformity of the result of § 6, the location of the accident in Quebec was purely fortuitous. The rights and liabilities of the parties which stem from their guest-host relationship should remain constant and not vary depending upon where the accident occurred. *See Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

In this case, where both parties began and intended to end the excursion in Vermont, the automobile involved was insured and registered in Vermont and the parties' relationship was centered in Vermont, it is neither unpredictable nor surprising that the laws of Vermont should be utilized for compensation against the allegedly negligent driver.

### III. *Conclusion*

This Court determines that the law of the forum state requires application of the Restatement Second for the choice of law. In analyzing the significant interests of the

place of injury, Quebec, and the forum state, Vermont, we conclude that Quebec's status as the place of injury is not a significant contact for purposes of choice of law. Based on both the significant relationship test of § 145(2) and policy factors of § 6 of the Restatement Second, Vermont has a significant interest in the controversy at hand. Accordingly, the law of Vermont will apply and Defendant's Motion for Partial Summary Judgment is DENIED.