NORTHWEST PIPE CO., Petitioner, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for THE COUNTY OF CLARK, and THE HONORABLE GENE T. PORTER, District Judge, Respondents, and CHRISTOPHER STAYTON, ALAN STAYTON, By and Through Their Natural Father and Guardian, VAN STAYTON; DONNA R. CLARK, Personal Administratrix of the Estate of SANDRA LEE DAVIS, aka SANDRA LEE VIGIL; CHRISTINA ARGUELLO, MANUAL VIGIL, III, a Minor, By and Through CHERYL MARTINEZ, Guardian and Personal Representative of the Estate of MANUAL VIGIL, II; LINDA COZZOLINO, an Individual; HAZEL COKER, Special Adminstratrix of the Estate of RANDALL W. LEDFORD, Deceased; THE ESTATE OF RANDALL W. LEDFORD; THELMA JACQUELINE ALSTON; DONALD ALSTON; and LEONARD LEDFORD, an Individual, Real Parties in Interest.

No. 36699

March 13, 2002                                   42 P.3d 244

[Rehearing denied May 7, 2002]

MAUPIN, C. J., with whom BECKER, J., agreed, dissented in part. AGOSTI, J., with whom LEAVITT, J., agreed, dissented.

*Cohen, Johnson, Day, Jones & Royal* and *Geoffrey A. Potts,* Las Vegas, for Petitioner.

*Beckley, Singleton, Chtd.,* and *Charles A. Michalek, Daniel F. Polsenberg* and *James L. Edwards,* Las Vegas, for Real Parties in Interest Thelma Jacqueline Alston and Donald Alston.

*Hafen, Porter & Storm, Ltd.*, Las Vegas, for Real Parties in Interest Christopher Stayton, Alan Stayton, and Estate of Sandra Lee Vigil (Davis).

*Harrison Kemp & Jones, Chtd.*, Las Vegas, for Real Parties in Interest Linda Cozzolino and Estate of Randall W. Ledford and Leonard Ledford.

*Mainor & Harris*, Las Vegas, for Real Parties in Interest Christina Arguello, Manual Vigil, III, and Estate of Manual Vigil, II.

## OPINION

By the Court, SHEARING, J.:

Northwest Pipe Company has filed an original petition for a writ of mandamus or prohibition challenging a district court order ruling that Nevada law governs the underlying wrongful death actions arising out of a fatal automobile accident that occurred in California. We conclude that the district court did not manifestly abuse its discretion in determining that Nevada law governs.

The underlying actions arose from an accident that occurred on a highway in San Bernardino County, California, when three concrete pipes weighing several tons fell off a Northwest Pipe Company truck and struck several vehicles. Six individuals were killed: two Nevada residents, Manual and Sandra Vigil, and four California residents, Randall and Melissa Ledford and their two

children, Lonnie and Skyler. Eleven plaintiffs, the real parties in interest in this proceeding, filed wrongful death actions in the district court. All plaintiffs are Nevada residents, except Linda Cozzolino and Leonard Ledford, who are California residents. Northwest Pipe Company, apparently the sole remaining defendant, is an Oregon corporation, with headquarters in Oregon and business interests throughout the United States, including Nevada. In fact, the pipes that fell from the truck were apparently destined to be used in a Las Vegas Valley Water District project.

Northwest Pipe does not dispute the jurisdiction of the Nevada courts, but argues that the Nevada district court should apply California law in the wrongful death actions before it. Both Northwest Pipe and the real parties in interest agree that the choice of law question is governed by *Motenko v. MGM Dist., Inc.*[1] Under *Motenko,* the law of the forum is presumed to govern unless two or more of four enumerated factors show that another state has an overwhelming interest in the litigation. These factors are:

> (a) it is the place where the conduct giving rise to the injury occurred;
> (b) it is the place where the injury is suffered;
> (c) the parties have the same domicile, residence, nationality, place of incorporation, or place of business and it is different from the forum state;
> (d) it is the place where the relationship, if any, between the parties is centered.[2]

In this case, the only factor favoring application of California law is that the conduct giving rise to the injury occurred in California. *Motenko,* however, recognizes that even though an accident occurs in one state, the compensable injury may be suffered in a different state. In *Motenko,* plaintiff's parent was physically injured in Nevada, but the legal injury, for purposes of a claim for loss of parental consortium, was suffered in Massachusetts. The same is true in a wrongful death action in which the injury is to the survivors. In this case, almost all of the survivors are Nevada residents, and the Vigils' children, who are impacted the most, are Nevada residents. Therefore, although the deaths occurred in California, the injury to the survivors has occurred in Nevada.

The remaining two factors mentioned in *Motenko* also do not demonstrate that California has an overwhelming interest in this litigation. The parties do not have the same non-Nevada domicile,

---

[1]112 Nev. 1038, 921 P.2d 933 (1996).

[2]*Id.* at 1049, 921 P.2d at 935.

and no other relationship exists between the parties that is centered elsewhere. Since Northwest Pipe cannot show that two or more of the *Motenko* factors are met, the presumption that the law of the forum governs is not overcome.[3]

The district court did not manifestly abuse its discretion[4] in ruling that Nevada law applies to the wrongful death action before it. Therefore, we deny this petition.

YOUNG and ROSE, JJ., concur.

MAUPIN, C. J., with whom BECKER, J., agrees, concurring in part and dissenting in part:

I concur in the majority conclusion that the district court should apply Nevada law to this controversy when it is tried in district court, but with two exceptions. Under *Motenko,* the law of the forum is presumed to govern unless other non-forum factors show that another state has an overwhelming interest in the litigation.[1] In an action brought in Nevada, another state has an overwhelming interest if two of the following non-forum based factors are met: (1) the conduct giving rise to the injury occurred in that other state; (2) the injury was suffered in the other state; (3) the parties have the same domicile, residence, nationality, place of incorporation, or place of business and it is different from the forum state; and (4) the other state is the place where the relationship, if any, between the parties is centered.[2]

The majority correctly notes that the third and fourth factors are not implicated in this case. It also correctly notes that only one factor in favor of applying California law exists, at least as to the cases brought by the Nevada residents. However, as to the two cases initiated by the California residents, it appears that two of the *Motenko* factors are met. First as noted, the accident causing the injury occurred in the State of California. Second, the wrongful death damages are being suffered in California.

Thus, under our formula in *Motenko,* at least as to the two California plaintiffs, California does have an overwhelming interest in the application of its law to their claims.

AGOSTI, J., with whom LEAVITT, J., agrees, dissenting:

I would grant the petition for a writ of mandamus. I disagree with the test enunciated in *Motenko v. MGM Dist., Inc.*[1] I would

---

[3]*Id.* at 1041, 921 P.2d at 935.

[4]*Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).

[1]*Motenko v. MGM Dist., Inc.,* 112 Nev. 1038, 1041-42, 921 P.2d 933, 935 (1996).

[2]*Id.*

[1]112 Nev. 1038, 921 P.2d 933 (1996).

apply the significant relationship test of the *Restatement (Second) of Conflict of Laws* § 175 (1971) which states the following:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.[2]

The principles of section 6 referred to in section 175 are stated in section 6(2) and are as follows:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

The *Restatement* comments to section 6(2) are instructive. These factors are not meant to be exclusive, nor are they listed according to their importance; the weight to be assigned to each factor will vary according to different areas of choice of law.[3]

When this court adopted the *Motenko* standard, it borrowed and modified section 145 of the *Restatement*. The exact language of section 145 bears examination here:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

---

[2]See also *Restatement (Second) Conflict of Laws* § 146 (1971), which deals with personal injuries and is identical in all respects to section 175.

[3]*Restatement (Second) of Conflict of Laws* § 6 cmt. c (1971).

(d) the place where the relationship, if any, between the parties is centered.

Once again, the comments to section 145 are instructive. This rule is cast broadly and generally but notes that, where it is possible, the *Restatement* has also enunciated particular, more precise rules for some specific torts.[4] Following the general rule of section 145 are a number of sections which enunciate the choice of law test for specific torts. For example, section 146 applies to personal injuries; section 147 applies to injuries to tangible things; section 148 applies to fraud and misrepresentation; section 149 applies to defamation; section 175 applies to a right of action for death.

In *Motenko,* a personal injury case, this court referred to section 146 but focused on the language of section 145 when it criticized the *Restatement* approach. I believe that because the *Restatement* enunciated a specific test for torts involving personal injuries and wrongful death, reference to section 145 was unnecessary. Instead, referring to sections 146 and 175, the law of the state where the injury occurred applies unless another state has a more significant relationship to the occurrence and the parties. In making the determination of whether another state has a more significant relationship, the rule points to a consideration of the factors enumerated in section 6(2). Those factors, each and every one of them, boil down to policy considerations which affect the parties and the states involved. The "significant relationship" test examines not only factual matters like where the injury occurred, but also the forum and non-forum states' relationships to the case and what interests and policies of each state are implicated according to which state's law is chosen.

I am struck by the comments of Justice Cliff Young in his concurring opinion in *Motenko.* In agreeing with the result reached by the majority while disagreeing with the new test enunciated by the majority, he considered Nevada's strong public policy of protecting its tourist industry.[5] This very important consideration supports the majority's decision to apply Nevada law in *Motenko.* Unfortunately, application of the test adopted in *Motenko* never permits a court to consider the important policy questions which inevitably arise in choice of law controversies. The *Motenko* test does not incorporate the specific reference in sections 146 and 175 to the policy considerations of section 6(2). As the *Motenko* dissent observed, the majority test is quantitative rather than qualitative.[6]

---

[4]*Id.* § 145 cmt. a.

[5]*Motenko,* 112 Nev. at 1043, 921 P.2d at 936 (Young, J., concurring).

[6]*Id.* at 1048, 921 P.2d at 939 (Steffen, C. J., dissenting).

I would also note that since not all the factors of the *Motenko* test will be relevant to every choice of law controversy, and since the rule requires that two or more factors must be met before the law of a non-forum state may be applied, it is unlikely that anything but Nevada law will ever apply. As such, I agree with the observation made by the dissent in *Motenko* that the majority has in reality not abandoned the "vested rights" rule at all. I also agree with the dissent's critique of the "vested rights" rule.[7]

While the *Motenko* test might seem to promote predictability and uniformity, prized interests of the *Motenko* majority,[8] I question its reasonableness.

First, because two justices dissent to Nevada law being applied to the California plaintiffs' causes of action, and because I and the justice who concurs with me join them in this conclusion, we comprise a majority and California law will be applied to those causes of action. Thus, California law will apply to some but not all the plaintiffs in this action. The goal of uniformity is not achieved within the case itself. Predictability is also not apparent. The justices who here concur in part and dissent in part disagree with the majority as to the result achieved through application of the *Motenko* test to the California plaintiffs. It was precisely upon the observation that under the *Restatement* test "[d]ifferent judges can weigh the same factors to reach opposite conclusions"[9] that the *Restatement* test was rejected in favor of the modified version adopted by the majority in *Motenko*. It is not reasonable to adopt a test that suffers from the same defects as the rejected test.

Ironically, the *Restatement* recognizes that the values of predictability and uniformity enumerated in section 6(2)(f) may not always be achieved. As pointed out in its commentary, "[p]redictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions," but predictability and uniformity can "be purchased at too great a price. In a rapidly developing area, such as choice of law, it is often more important that good rules be developed than that predictability and uniformity of result should be assured through continued adherence to existing rules."[10] In the case before us today, as well as in *Motenko,* the parties cannot be said to have given advance thought to the legal consequences of their transactions. These are negligence cases.

Second, I believe that applying Nevada law in this case is unreasonable since virtually every fact and circumstance giving

[7]*Id.* at 1047, 921 P.2d at 938-39 (STEFFEN, C. J., dissenting).

[8]*Id.* at 1041, 921 P.2d at 935.

[9]*Id.*

[10]*Restatement (Second) Conflict of Laws* § 6 cmt. i (1971).

rise to the causes of action, except for the domicile of some of the plaintiffs, points to the application of California law. This terrible accident occurred in California. Under the *Restatement* approach, the law of California applies because that is where the injury occurred, unless Nevada has a more significant relationship to the occurrence and the parties under the principles stated in section 6. Nevada has no relationship, significant or otherwise, to the occurrence of the accident. Nevada has a relationship to some of the plaintiffs but to none of the defendants. It seems to me that Nevada's relationship to some of the plaintiffs is not significant enough to warrant the selection of Nevada law over California's. Nevada has no strong articulated public policy that would favor such a result. In contrast, California certainly has a strong interest in the enforcement of its traffic laws; the allegation has been made that the driver of the truck from which the pipes fell was driving under the influence of alcohol and that his driving contributed to the accident.[11]

I favor the *Restatement* approach, not as described in *Motenko,* but as set out in the *Restatement.* I would apply that test here and I would conclude that it is appropriate to choose California law. Therefore I would grant the relief prayed for in the writ.

---

[11]See *Griffith v. White,* 929 F. Supp. 755, 759 (D. Vt. 1996), where the court concluded that the state where the drinking occurred has a greater interest in having its laws applied since that state has an inherent interest in protecting the public from drunk drivers. *See also Wert v. McDonnell Douglas Corp.,* 634 F. Supp. 401 (E.D. Mo. 1986).